UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIERRA VERDE ESCAPE, LLC,
TOW DEVELOPMENT, LLC, and
AMI INVESTMENT HOLDINGS, LLC,

        Plaintiffs,                              Case No. 1:16-CV-100

v.                                                      HON. GORDON J. QUIST

THE BRITTINGHAM GROUP, LLC,
CHARLES T. NOCK, JOHN C. NOCK,
and BRIAN D. BRITTSAN,

        Defendants.
_____/

## **OPINION**

Plaintiffs sued Defendants claiming a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, conversion, fraud, breach of fiduciary duty, and civil conspiracy. (ECF No. 1.) Defendants filed a motion to dismiss, which the Court construes as a motion to compel arbitration in Hong Kong under the Federal Arbitration Act (FAA) and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) For the following reasons, the Court will grant Defendants' motion to compel arbitration, deny Defendants' motion to dismiss as moot, and stay the case pending arbitration.

### **I. BACKGROUND**

The three Plaintiffs' claims stem from a transaction in which Defendants allegedly used several misrepresentations to induce Plaintiffs to enter into three substantively identical Memoranda of Understanding (collectively MOU) with Defendant The Brittingham Group, LLC. Plaintiff Tierra Verde Escape, LLC is a Florida limited liability company organized in November

of 2014. (ECF No. 38-3.) Plaintiff TOW Development Company, LLC is a Delaware LLC organized and activated in March of 2015. (ECF No. 38-5.) TOW is licensed to conduct business in Michigan. (ECF No. 38-6.) Plaintiff AMI Investment Holdings, LLC is a Nevada LLC organized in August of 2015. (ECF No. 38-8.) AMI is licensed to do business in Arizona. (ECF No. 38-9.)

Defendant Brittingham Group, LLC is an Arkansas limited liability company organized by Defendant Charles Nock. (ECF No. 38-2.) Defendant Brian Brittsan worked for Brittingham Group and entered into negotiations with employees of Bankers Capital, LLC and Northwind Financial Corporation in June 2015.[1] Bankers Capital and Northwind Financial, in turn, advised Plaintiffs to invest their money with Brittingham.

The MOU provided that Plaintiffs would transfer money to Defendants, who would invest that money; the parties would share equally in net profits, which were apparently expected, at least by Plaintiffs, to be as high as 100% per week. (ECF No. 41-8 at PageID.333.) Tierra Verde agreed to transfer $550,000 to a HSBC account at a Hong Kong bank held by Gold Express Holdings Limited. (ECF No. 38-1 at PageID.203.) TOW agreed to transfer $550,000 to a HSBC account in Hong Kong held by Smart Jobs Limited. (ECF No. 38-4 at PageID.218.) AMI agreed to transfer $550,000 to the same account in Hong Kong held by Smart Jobs Limited. (ECF No. 38-7 at PageID.237.) The MOU contained a clause stipulating that "any dispute arising under this MOU shall be decided by arbitration conducted in Hong Kong." (ECF No. 38-1 at PageID.205; ECF No. 38-4 at PageID.220; ECF No. 38-7 at PageID.238.)

As agreed, Plaintiffs transferred their combined total of $1,650,000 to a Hong Kong bank. Plaintiffs have seen zero return on or of their investments. Receiving nothing, Plaintiffs alleged

---

[1] Northwind and Bankers Capital were originally named plaintiffs, but were dismissed from the action for lack of Article III standing. (ECF No. 57.)

2

fraud and sued Defendants in federal court. Defendants, as stated, have moved to dismiss—arguing that any dispute between Plaintiffs and Defendants is subject to arbitration in Hong Kong.

## II. DISCUSSION

### A. Jurisdiction

There is a question as to this Court's jurisdiction to compel arbitration in Hong Kong. Section 4 of the FAA, upon which Defendants initially relied, "prevents federal courts from compelling arbitration outside of their own district." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (citing 9 U.S.C. § 4). But "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards does allow federal courts to order arbitration abroad in international commercial disputes in some circumstances." *Id.* at 1018 (citing 9 U.S.C. § 201 *et seq.*). Section 202 of the FAA provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

Circuit courts have formulated various tests, but all courts to address § 202 have held the statute grants jurisdiction to compel arbitration when:

> [1] there is an agreement in writing within the meaning of the Convention.
> [2] the agreement provides for arbitration in the territory of a signatory of the Convention.
> [3] the agreement arises out of a legal relationship which is considered commercial.
> [4] a party to the agreement is not an American, or the relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

3

*Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016) (internal citations, alterations, and quotation marks omitted); *see also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999). "Further, a district court 'must be mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes.'" *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1158 (2016) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1272 (11th Cir. 2011)).

The parties here dispute only the fourth element. Because all parties are Americans, the controlling issue is whether the parties' "relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. Whether or not the agreement envisages performance or enforcement abroad "'should be determined by the termini of the journey, rather than by the route actually taken.'" *Alberts*, 834 at 1204 (quoting *United States v. Hutchins*, 151 U.S. 542, 544, 14 S. Ct. 421, 422 (1894)).

Plaintiffs argue that the MOU do not fall under the Convention because "Plaintiffs' $1.5 million never even went into a Brittingham account and is allegedly located in South Africa in an account owned by another entity over which Brittingham has no ownership or control." (ECF No. 98 at PageID.712-13.) These facts, if true, are irrelevant because "[t]he test set forth in 9 U.S.C. § 202…is whether the contractual relationship 'envisages' performance abroad, not whether performance actually occurs abroad." *New Avex, Inc. v. Socata Aircraft Inc.*, No. 02 CIV.6519 DLC, 2002 WL 1998193, at *3 (S.D.N.Y. Aug. 29, 2002).

Defendants argue that the MOU envisage performance abroad because they stipulated that Plaintiffs would perform by transferring money to bank accounts in Hong Kong. (ECF No. 104 at

4

PageID.774.) The transfer of money was Plaintiffs' only obligation under the MOU, and the "termini" of the performances is abroad. The MOU also necessarily envisage Defendants performing abroad, at least in part, inasmuch as the MOU contemplated Defendants using the money from the Hong Kong accounts as investment capital.

The Court holds that this amounts to sufficient evidence that the relationship envisaged performance abroad. *See Alberts*, 834 F.3d at 1204 (concluding that employee's contract to work aboard a passenger cruise ship that sailed from Florida through international waters to several foreign ports envisaged performance abroad); *HBC Solutions, Inc. v. Harris Corp.*, No. 13-CV-6327 JMF, 2014 WL 3585503, at *3 (S.D.N.Y. July 18, 2014) (finding jurisdiction under § 202 when "the transaction involved the sale of fifteen foreign companies and transfer of assets in twenty-three foreign jurisdictions"); *cf. Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335, 1338–39 (S.D. Fla. 2013) (holding that agreement did not "envisage Plaintiff's performance of work or services abroad because Plaintiff performed work only aboard [a cruise ship] and was never requested to perform work or services on foreign soil").

## B. Validity of Arbitration Agreement

So long as these jurisdictional requirements are met, "[t]he language of the treaty and its statutory incorporation provide for no exceptions. When any party seeks arbitration, if the agreement falls within the convention, [the court] must compel the arbitration unless the agreement is 'null and void, inoperative, or incapable of being performed.'" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 469 (6th Cir. 2009) (citing Convention Art. II(3)). "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals." *Escobar,* 805 F.3d at 1286 (citing *Bautista v. Star Cruises*, 396

5

F.3d 1289, 1302 (11th Cir. 2005)).

Even though Plaintiffs allege that they were induced to enter into the MOU by Defendants' misrepresentations, the FAA "does not permit [a] federal court to consider claims of fraud in the inducement of the contract generally." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45, 126 S. Ct. 1204, 1208 (2006) (internal quotation marks omitted). "[I]n order to void an arbitration clause, the complaint must contain a well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement,* that would provide grounds for the revocation of the agreement to arbitrate." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 394 (6th Cir. 2003) (emphasis in the original) (internal quotation marks omitted). The Complaint does not mention the arbitration provisions specifically, much less contain any "well-founded claim of fraud" solely related to the arbitration clauses. (ECF No. 1.) Thus, Plaintiffs' challenges to the MOU must be decided in arbitration.

Relatedly, the MOU specify that "[t]he arbitrators shall utilize the Rules of Arbitration of the Hong Kong Arbitration Association for procedural guidance but not as to costs." (ECF No. 38-4 at PageID.221.) As Plaintiffs point out, the Hong Kong Arbitration Association does not exist. Courts have consistently held that when "parties mistakenly designated an arbitration forum that does not exist, the forum selection provision of the arbitration agreement is 'null and void' under Article II(3)." *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 170 (3d Cir. 2012) (citing *Rosgoscirc v. Circus Show Corp.*, No. 92–Civ.–8498, 1993 WL 277333, at *4 (S.D.N.Y. July 16, 1993)). If, however, "there is sufficient indication elsewhere in the contract of the parties' intent to arbitrate…the parties' agreement to arbitrate remains in force," and courts will compel arbitration at an appropriate forum. *Id.* (citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002)).

The Court will similarly treat the arbitration rules provision in the MOU as null and void. "The validity of the arbitration agreement, therefore, turns on whether the agreement to arbitrate all disputes was separate and severable from" the rules provision. *Great Earth Cos.*, 288 F.3d at 890 (citing *Nat'l Iranian Oil Co. v. Ashland Oil, Inc*., 817 F.2d 326, 333 (5th Cir. 1987)). The MOU provide that "[i]n the event any provision of this MOU shall be determined to be invalid or non-binding for any reason whatsoever, the remainder of this MOU shall continue to be valid and in effect and shall be fully binding on the Parties." (ECF No. 38-1 at PageID.207.)

"[W]hen the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 675 (6th Cir. 2003) (citing *Great Earth Cos*., 288 F.3d at 890–91). Severability is generally[2] a question of the parties' intent, but arbitration should be compelled if there is any possibility that the parties intended to arbitrate because "Supreme Court precedent dictates that [courts] resolve any doubts as to arbitrability 'in favor of arbitration.'" *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25, 103 S. Ct. 927, 941 (1983)). Accordingly, the Court will enforce the arbitration clause in the MOU notwithstanding the invalid rules provision. The Court is confident that the parties or their appointed arbitrators will agree on a set of rules to use.[3]

---

[2] The issue of severability is one of state law, *see Morrison*, 317 F.3d at 674, and the MOU contain a choice-of-law clause dictating that they be "construed in accordance with, and governed by the laws of Hong Kong." (ECF No. 38-1 at PageID.205.) The parties have not provided any indication that Hong Kong law would treat severability differently than most states, and, again, any doubt would be resolved in favor of compelling arbitration.

[3] For example, the Hong Kong International Arbitration Centre publishes rules that may most closely approximate the parties' intent. *See Rules & Practice Notes*, Hong Kong Int'l Arbitration Centre, http://www.hkiac.org/arbitration/rules-practice-notes (last visited August 25, 2017). The American Arbitration Association's rules are also widely available. *See Rules, Forms & Fees*, American Arbitration Association, https://www.adr.org/Rules (last visited August 25, 2017).

### C. Staying or Dismiss

Having concluded that it will compel arbitration, the Court has two options: either dismiss the complaint without prejudice, *see, e.g., Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000), or stay the case pending the outcome of the arbitration. *See Inland Bulk*, 332 F.3d at 1018.

The Court will stay the case.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion and compel arbitration. The Court will stay the case pending arbitration.

A separate Order will enter.


Dated: August 28, 2017                                /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE